**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEREMY JOHNSTON,
  Plaintiff, an individual.

v.

FCA US LLC, a Delaware limited liability company,
formerly known as Chrysler Group LLC and known
to Plaintiff as Chrysler/Stellantis,
  Defendant.

Case No. 26 – cv -
Hon.
Mag.

**JURY DEMAND**

## COMPLAINT AND JURY DEMAND

Plaintiff Jeremy Johnston, by and through counsel, states the following Complaint against Defendant FCA US LLC.

## PARTIES

1. Plaintiff Jeremy Johnston is an individual residing in Utica, Macomb County, Michigan.

2. Defendant FCA US LLC is a Delaware limited liability company doing business in Michigan. Defendant at all relevant times to Plaintiff's Complaint operated the Sterling Heights Assembly Plant located in Sterling Heights, Michigan, where Plaintiff worked. Defendant is the entity historically known to many employees as Chrysler.

1

3.  At all relevant times, Defendant was an employer within the meaning of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act As Amended, the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), and the Michigan Persons with Disabilities Civil Rights Act ("MPDCRA").

4.  At all relevant times, Plaintiff was an employee within the meaning of those statutes.

## JURISDICTION AND VENUE

5.  This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under Title VII, 42 U.S.C. § 2000e et seq., and the Americans with Disabilities Act As Amended, 42 U.S.C. § 12101 et seq ("ADAAA").

6.  This Court has supplemental jurisdiction over Plaintiff's related Michigan statutory claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

7.  Venue is proper in this District under 28 U.S.C. § 1391 and Title VII's venue provisions because the relevant employment practices occurred in Sterling Heights, Michigan, within the Eastern District of Michigan, and relevant employment records are maintained or administered in Michigan.

2

8.  Plaintiff timely filed Charge No. 471-2025-06178 with the Equal Employment Opportunity Commission against Defendant or Defendant's predecessor/affiliate identified as FCA/Chrysler/Stellantis.

9.  On March 6, 2026, the EEOC issued a Dismissal and Notice of Rights as to Charge No. 471-2025-06178. Plaintiff received that Notice on or about March 6, 2026 and this Complaint is filed within ninety days of Plaintiff's receipt of the Notice.

**FACTUAL ALLEGATIONS**

11.  Plaintiff began working for Defendant or Defendant's predecessor on or about May 3, 2010, and worked as an hourly bargaining-unit employee at Defendant's Sterling Heights Assembly Plant.

12.  Plaintiff was a member of the bargaining unit represented by the UAW, including Local 1700, during his employment.

14.  Plaintiff has a disability, a record of disability, and/or is/was regarded as disabled within the meaning of the ADA and the PWDCRA.

15.  Plaintiff is a brain-cancer survivor and has a history of learning disability and cognitive limitations. His impairments affect or have affected among other things his memory, cognitive processing, executive functioning, time

3

management, concentration, neurological functioning, and related major life activities and bodily functions.

16. Defendant knew or should have known of Plaintiff's disabilities and record of disability through Plaintiff's employment history, medical and leave records, communications and interactions with management, human resources, and union representatives.

17. Plaintiff was qualified for his position and performed the essential functions of his job with or without reasonable accommodation and had worked for Defendant for many years.

18. Defendant maintained policies prohibiting discrimination, sexual harassment, disability discrimination, and retaliation.

19. Defendant's policies instructed employees who witnessed activity or behavior violating the discrimination and harassment policy to report it to the EEO Compliance & Governance Office, the Ethics Helpline, local Human Resources, or management.

20. Defendant's policies prohibited retaliation against any person who in good faith reported or participated in the investigation of discrimination or harassment allegations.

21. On or about December 14-15, 2024 Plaintiff engaged in protected activity by reporting sexual harassment of a co-worker through Defendant's Ethics Helpline and/or related reporting channels.

22. Plaintiff reported the harassment in good faith because he believed the conduct toward the co-worker violated Defendant's policy and federal and state civil-rights laws.

23. On information and belief Defendant's call logs, ethics hotline records, telephone records, or related records will confirm Plaintiff's report(s) regarding the sexual harassment of his co-worker.

24. After Plaintiff reported the sexual harassment of his co-worker Defendant subjected Plaintiff to heightened scrutiny, failed to credit or properly investigate his report, and later terminated him under circumstances that show retaliatory and discriminatory motive.

25. Defendant has asserted that Plaintiff was terminated solely because he accumulated attendance points under Defendant's no-fault attendance procedure.

26. Defendant's stated reason is not the true reason for Plaintiff's termination. It is a pretext for retaliation for protected activity and discrimination based on disability, record of disability, perceived disability and/or Defendant's failure to accommodate disability-related limitations.

27.  Defendant's attendance procedure as described by Defendant used attendance points and provided for written warning at or around six points, a five-day disciplinary layoff at seven through eight-and-one-half points, and discharge at nine points.

28.  Defendant's attendance procedure, as described by Defendant, treated certain contractually protected or approved absences - including medical leaves and leave protected by law - differently from unexcused absences.

29.  Defendant knew that Plaintiff's cognitive and neurological limitations could affect timely call-in, memory, organization, scheduling, and other attendance-related administrative requirements.

30.  Despite this knowledge, Defendant did not engage in a timely, good-faith interactive process with Plaintiff to determine whether reasonable accommodations were needed or available.

31.  Reasonable accommodations could have included, without limitation, individualized review of attendance occurrences, proper medical and leave coding, modified or supported call-in procedures, reminders or assistance with attendance reporting, short leave, return-to-work planning, review and correction of attendance records, or other effective accommodations that would not impose an undue hardship.

32. On or about March 27, 2025, Defendant claimed that Plaintiff had accumulated between seven and eight-and-one-half attendance points and issued or purported to issue a five-day disciplinary layoff for an alleged March 20, 2025 occurrence.

33. Plaintiff disputes that Defendant accurately calculated his points, provided him meaningful advance notice, or properly treated all relevant time under its policies and applicable law.

34. Plaintiff further disputes that Defendant gave him adequate paperwork, explanation, or opportunity to understand and challenge the point calculation before termination, particularly given his cognitive limitations and Defendant's knowledge of those limitations.

35. Plaintiff reasonably believed, and had been told or led to believe, that his point balance was lower than the balance Defendant later used to terminate him.

36. Defendant's systems and conduct were inconsistent with its later claim that Plaintiff was discharge-eligible before the termination decision. Plaintiff was permitted to enter the facility, communicate with Human Resources, and return to work or attempt to return to work without receiving prior clear notice that he was already at or near discharge.

37. On or about April 4, 2025, Plaintiff reported to work or attempted to report consistent with the information and permission he had been given after the purported disciplinary layoff.

38. On or about April 7, 2025, Plaintiff went to Human Resources to address the situation, including attendance and scheduling confusion. Rather than engage in an interactive process or correct the attendance records, Defendant terminated Plaintiff.

39. Defendant's termination document states that Plaintiff was discharged on April 7, 2025 because he had accumulated nine points in the no-fault attendance procedure, with an occurrence date of April 4, 2025.

40. Plaintiff refused to sign the termination document because he disputed the point total, the process, the fairness of the discharge, and the conclusion that attendance was the true reason for termination.

42. Plaintiff's Union filed a grievance challenging the discharge and seeking reinstatement, back wages, seniority, and make-whole relief. Defendant denied the grievance and claimed there was no contractual violation because Plaintiff allegedly reached nine points.

43. Plaintiff has not received meaningful further documentation or action from the Union beyond the materials presently available to him.

44.  Defendant's conduct caused Plaintiff to lose wages, benefits, seniority, and other employment advantages, and caused emotional distress, humiliation, inconvenience, and other compensable damages.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII
### 42 U.S.C. § 2000e-3(a)

45.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

46.  Plaintiff engaged in protected activity under Title VII when he opposed and reported what he reasonably and in good faith believed was sexual harassment of a co-worker.

47.  Defendant knew or should have known of Plaintiff's protected activity because Plaintiff reported the harassment through Defendant's Ethics Helpline and/or other designated reporting channels.

48.  Defendant subjected Plaintiff to materially adverse actions, including heightened scrutiny, in addition to failing to process or recognize his complaint, in addition to subjecting Plaintiff to discipline and ultimately and termination.

49.  There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions including temporal proximity, Defendant's

inconsistent explanations regarding, and Defendant's use of an attendance rationale that was false, exaggerated, and/or insufficient.

50. Defendant's actions violated Title VII, 42 U.S.C. § 2000e-3(a).

51. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages recoverable under Title VII.

## COUNT II
## DISABILITY DISCRIMINATION AND DISCRIMINATORY DISCHARGE IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (AS AMENDED)

52. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

53. Plaintiff is disabled, has a record of disability, and/or was regarded as disabled within the meaning of the ADAAA.

54. Plaintiff was a qualified individual with a disability because he could perform the essential functions of his position with or without reasonable accommodation.

55. Defendant knew or should have known of Plaintiff's disability, record of disability, and/or perceived disability.

56. Defendant discriminated against Plaintiff on the basis of disability, record of disability, and/or perceived disability by disciplining and terminating him, by applying standards and methods of administration that adversely affected him

because of disability-related limitations, and by refusing to consider or correct disability-related attendance issues.

57.    Defendant's stated attendance reason was a pretext for disability discrimination.

58.  As a direct and proximate result of Defendant's ADAAA violations, Plaintiff suffered damages recoverable under the ADAAA.

## COUNT III
## FAILURE TO ACCOMMODATE AND FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS
## AMERICANS WITH DISABILITIES ACT

59.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

60.  Plaintiff had actual disabilities and/or a record of disabilities that substantially limited one or more major life activities and bodily functions, including learning, thinking, concentrating, memory, neurological function, brain function, and normal cell growth when active.

61.    Defendant knew or should have known of Plaintiff's need for reasonable accommodation because Defendant possessed medical and leave information, knew of or should have known of Plaintiff's cancer history and cognitive limitations, and knew or should have known that the asserted attendance issues involved memory, timing, notification, organization, and similar limitations.

62.  Defendant was required to engage in a timely, good-faith interactive process to identify effective reasonable accommodations.

11

63.  Defendant failed to engage in that process and instead treated Plaintiff solely as a discipline case.

64.  Reasonable accommodations were available and would have allowed Plaintiff to remain employed and perform the essential functions of his job without undue hardship to Defendant.

65.  Defendant's failure to accommodate and failure to engage in the interactive process violated the ADAAA.

66.  As a direct and proximate result of Defendant's ADAAA violations, Plaintiff suffered damages recoverable under the ADAAA.

## COUNT IV
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT
## MCL 37.2701

67.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

68.  Plaintiff engaged in protected activity under the Elliott-Larsen Civil Rights Act by opposing and reporting what he reasonably and in good faith believed was sexual harassment of a co-worker.

69.  Defendant knew or should have known of Plaintiff's protected activity.

70.  Defendant retaliated against Plaintiff by subjecting him to heightened scrutiny, discipline, and termination.

71.  Plaintiff's protected activity was a significant factor and/or motivating factor in Defendant's adverse actions.

12

72. Defendant's actions violated the Michigan Elliott-Larsen Civil Rights Act.

73. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff suffered damages recoverable under Michigan law.

## COUNT V
## DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

74. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

75. Plaintiff is a person with a disability and/or was perceived as having a disability within the meaning of the Michigan Persons with Disabilities Civil Rights Act.

76. Plaintiff's disability was unrelated to his ability to perform the duties of his job with or without reasonable accommodation.

77. Defendant knew or should have known of Plaintiff's disability and disability-related limitations.

78. Defendant discriminated against Plaintiff because of disability, record of disability, and/or perceived disability, and failed to reasonably accommodate Plaintiff as required by Michigan law.

79. Defendant's stated attendance reason was false, insufficient, and/or a pretext for unlawful disability discrimination.

13

80.   Defendant's actions violated the Michigan Persons with Disabilities Civil Rights Act.

81.   As a direct and proximate result of Defendant's unlawful disability discrimination and failure to accommodate, Plaintiff suffered damages recoverable under Michigan law.

## **PRAYER FOR RELIEF**

A.  Assume jurisdiction over this action;

B.  Enter judgment in favor of Plaintiff and against Defendant on all counts;

C.  Declare that Defendant's actions violated Title VII, the ADA, ELCRA, and PWDCRA;

D.  Award Plaintiff reinstatement to his former position or a comparable position, or front pay in lieu of reinstatement;

E.  Award Plaintiff back pay, lost benefits, lost seniority, pension and retirement losses, and all other economic damages;

F.  Award Plaintiff compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and other non-economic injuries;

G.  Award punitive, exemplary, and/or liquidated damages to the extent permitted by law;

H.  Award pre-judgment and post-judgment interest;

I.  Award reasonable attorney fees, costs, and expenses under applicable law;

J.  Order appropriate equitable and injunctive relief, including correction of employment and personnel records;

K.  Grant any other relief the Court deems just and proper.

## **JURY DEMAND**

82. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

MEROUEH & HALLMAN LLP

By: /s/ Odey K. Meroueh
Odey K. Meroueh (P76460)
Attorney for Plaintiff Jeremy Johnston
14339 Ford Road, Second Floor
Dearborn, Michigan 48126
Telephone: (313) 582-7469
Email: okm@mhatlaw.com

Dated: June 4, 2026

15